UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kevin Thompson,

        Plaintiff,

v.                                                                  Civil No. 07-2746 (JNE/JJG)
                                                                    ORDER

Buhrs Americas, Inc.,
and Buhrs Holding BV,

        Defendants.

---

Stephen W. Cooper, Esq., The Cooper Law Firm, Chartered, appeared for Plaintiff Kevin
Thompson.

Richard A. Ross, Esq., and Krista A.P. Hatcher, Esq., Fredrikson & Byron, PA, appeared for
Defendants Buhrs Americas, Inc., and Buhrs Holding BV.

---

        Kevin Thompson brings this action against Buhrs Americas, Inc. (Buhrs Americas), and

Buhrs Holding BV (Buhrs Holding) claiming the termination of his employment as president of

Buhrs Americas violates the Age Discrimination in Employment Act (ADEA), 29 U.S.C.

§§ 621-634 (2000), and the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363A.01-.41

(2006).  Specifically, Thompson alleges age discrimination, reprisal, and aiding and abetting age

discrimination and reprisal under the ADEA and MHRA.  Thompson also brings a claim under

Minnesota law for intentional infliction of emotional distress.[1]  Buhrs Americas asserts

counterclaims against Thompson for breach of fiduciary duties and breach of the duty of loyalty.

The case is before the Court on Defendants' motion for partial summary judgment on several of

---

[1]     Thompson brought additional claims under Title VII of the Civil Rights Act of 1964, 42
U.S.C. §§ 2000e to 2000e-17 (2000), and the MHRA for discrimination on the basis of national
origin and aiding and abetting national origin discrimination, state-law claims for breach of
contract and negligent infliction of emotional distress, and claims for violations of Minn. Stat.
§§ 181.11, .13, and .64 (2006).  At the hearing on January 30, 2009, counsel for Thompson
stated that Thompson was abandoning those claims.  Accordingly, those claims are dismissed.

Thompson's claims and Thompson's motion for summary judgment on Buhrs Americas' counterclaims. In addition, Thompson moves for sanctions under Rule 11 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants in part and denies in part Defendants' motion for partial summary judgment and denies Thompson's motions for summary judgment and for sanctions.

## I. BACKGROUND

Buhrs Americas sells and services poly- and paper-wrapping equipment and envelope-inserting equipment. Buhrs Americas is a U.S. subsidiary of Buhrs Mailing Solutions BV, a Dutch corporation. Buhrs Holding, another Dutch corporation, owns Buhrs Mailing Solutions BV, as well as a number of other entities. The parties refer to the entities held by Buhrs Holding as the "Buhrs Group"; the Court does the same. Convent Holdings BV owns ninety-five percent of Buhrs Holding, and the management of Buhrs Holding owns the remaining five percent. Convent Holdings BV is owned by Adrian van der Klooster and his family. Van der Klooster is the chairman of the board of directors of Buhrs Americas and president of Buhrs Holding.

Toward the end of 2005, Buhrs Americas began searching for a new president. Buhrs Americas first offered the position to Michael Aumann. At that time, Aumann was the vice-president of marketing and sales at Streamfeeder, an equipment manufacturer for the mailing, printing, and packaging industries. Aumann rejected the offer, and Buhrs Americas hired Thompson as its president in February 2006. According to van der Klooster, Thompson was then working as an individual sales representative, and lacked managerial and entrepreneurial experience. Thompson was forty-nine years old when hired. He is nine years older than Aumann.

Thompson began working for Buhrs Americas on March 1, 2006. Van der Klooster testified during his deposition that he became concerned about Thompson's performance after

receiving Thompson's May 2006 monthly report because it included a forecast that was off by hundreds of thousands of dollars.  Van der Klooster identified several additional areas of concern that arose over the next few months, including what he perceived as Thompson's inability to make operational improvements to Buhrs Americas, Thompson's failure to understand the business or build strong relationships with customers, and Thompson's lack of leadership with respect to sales representatives.  Ad Linssen, a member of the Buhrs Americas board of directors and the chief financial officer for the Buhrs Group, testified during his deposition that Thompson's monthly reports contained inaccurate forecasts.  Linssen also testified that Thompson was unable to explain the discrepancies and that his monthly reports failed to improve.  In October 2006, Linssen worked with Thompson on the Buhrs Americas budget for 2007.  According to Linssen, Thompson had "no clue" about the budget, which Linssen described as "full of errors."  Jan Clement, another member of the Buhrs Americas board of directors, testified during his deposition that senior salespeople at Buhrs Americas were unimpressed with Thompson.  According to Clement, Thompson "seemed to be lost" when trying to manage Buhrs Americas.

Disagreements arose between Thompson and directors of Buhrs Americas relating to the hiring of new employees for Buhrs Americas.  According to Thompson, van der Klooster repeatedly instructed him to hire people who were younger than Thompson and said he wanted Thompson to be the elder leader of Buhrs Americas.  Thompson testified during his deposition that when he informed van der Klooster that they could not take age into account when hiring in the United States, van der Klooster expressed doubt that anyone would know that they had considered age.  According to Thompson, van der Klooster said on two occasions while in the Netherlands that they could discuss age in the hiring context because they were on the European

side of the Atlantic Ocean.  In addition, it is undisputed that Linssen told Thompson that he needed to hire an "angry young man" as a controller.[2]  Thompson's notes from a meeting in October 2006 indicate that van der Klooster told Thompson that the candidates Thompson had identified for the service manager position were too old and that van der Klooster did not want to hear him talk about age again.  Thompson testified that he heard the Dutch word for "old" during meetings of the Buhrs Group when Dutch speakers would talk amongst themselves, look at Thompson, and mention his name.

In October 2006, Aumann spoke briefly with van der Klooster at a trade show and told him that things had not turned out as Aumann had expected at Streamfeeder.  On November 6, 2006, Aumann e-mailed van der Klooster announcing the acquisition of Streamfeeder by another company and indicating Aumann's renewed interest in a position with Buhrs Americas.

On November 13 and 14, 2006, the Buhrs Group had a two-day meeting in Rotterdam where the presidents or managing directors of the Buhrs Group subsidiaries presented their budgets.  Thompson presented the 2007 budget for Buhrs Americas.  Van der Klooster and Clement testified that the quality of Thompson's budget was poor and that his presentation was unimpressive.  According to Thompson, van der Klooster repeatedly used Thompson's budget to illustrate budgeting errors in a humiliating manner.  Van der Klooster also criticized Thompson's budget during a subsequent dinner with Thompson, van der Klooster's wife, and one of Thompson's peers.

Van der Klooster testified that it was clear from the atmosphere at the budget meeting that Buhrs Group management had lost confidence in Thompson.  Van der Klooster informed

---

[2]     The parties dispute the meaning of this phrase.  Van der Klooster and Linssen testified that in the Netherlands, the expression "angry young man" refers to a "go-getter" or an ambitious person.  Thompson testified that Linssen said the expression meant a young man who had graduated within the last few years and had minimal experience.

Thompson the next day, November 15, that van der Klooster had decided that Thompson could not continue as president of Buhrs Americas.  November 15 was Thompson's 50th birthday, and Thompson had plans to celebrate with his wife in London that weekend.  Van der Klooster knew that it was Thompson's 50th birthday and knew of Thompson's weekend plans.  Van der Klooster testified that he informed Thompson of his decision on November 15 because he wanted to do so in person and had no plans to visit the United States in the near future.  Van der Klooster also testified that he wanted to tell Thompson as soon as possible so Thompson could begin looking for new employment.

Thompson signed a separation agreement during his November 15 meeting with van der Klooster.  The separation agreement provided that Buhrs Americas would pay Thompson his base salary and benefits for six months in exchange for Thompson's continued performance as president during that period.  At any time, Buhrs Americas could elect to pay Thompson his base salary in lieu of his continued performance.

After executing the separation agreement, van der Klooster presented Thompson with an "Abraham."  Van der Klooster testified that an Abraham is a cake representing the Biblical figure Abraham that, in the Netherlands, is traditionally given to a man on his 50th birthday to symbolize the wisdom he achieves when he reaches that age.[3]  According to van der Klooster, the Abraham had been ordered before the meetings on November 13 and 14 and he was unsure

---

[3]    Thompson claims that van der Klooster told him the Abraham gives a man wisdom as he is put out to pasture.  However, Thompson's deposition testimony regarding what van der Klooster said during the presentation of the Abraham is inconsistent.  During his deposition on June 24, 2008, Thompson testified that "Adrian had told me, well, this gives a guy who's finally reached the age of 50, it gives him wisdom, wisdom."  Thompson then testified "I took it as a slap in the face to say that, okay, maybe it's time for, you know, you to get out to pasture, old guy, because of the way, because of what it represented."  During Thompson's subsequent deposition on September 17, 2008, Thompson testified "[H]e explained to me that it's . . . a tradition, [van der Klooster] said, in Holland for when a man turns 50.  This gives me, I forget exactly what the words were, but something, as he goes out to pasture, this gives him wisdom."

whether he should present it to Thompson in light of his decision to terminate Thompson's employment.  Van der Klooster testified that he decided to present the Abraham to Thompson because the termination meeting passed amicably.

Shortly after Thompson returned to the United States, a disagreement arose between Thompson and directors of Buhrs Americas regarding the termination of Sherrie Healy, a sales representative over the age of fifty.  In the fall of 2006, Thompson had recognized the need to lay off a sales representative and identified Healy as the sales representative to be terminated.  Sales manager Gary Harris testified during his deposition that Thompson told him in early November 2006 that Thompson planned to terminate Healy.  Thompson claims he determined at the end of November that Michael Martinis, a man in his thirties, should be terminated instead of Healy.[4]

Thompson testified that after he decided to terminate Martinis, he received a phone call from Clement informing him that he had to terminate Healy rather than Martinis.  Despite this instruction, Thompson refused to effectuate Healy's termination.  According to Thompson, he believed Healy's termination was motivated by her age.  Harris called Thompson on December 6, 2006, to discuss Healy's performance.  At that time, Thompson informed Harris that Buhrs Americas had decided to terminate Healy, that Thompson was refusing to effectuate her termination, and that Harris had to effectuate it.  Harris contacted Clement, who told him to terminate Healy immediately.  Thompson e-mailed a draft termination letter and a draft separation agreement and release to Linssen.  Thompson also e-mailed the separation documents to Harris.

---

[4]  Healy's termination is the subject of a separate lawsuit that is currently pending in the District of Minnesota.  *See Healy v. Buhrs Ams., Inc.*, Civil No. 08-304 (D. Minn. filed Feb. 1, 2008).  The Court expresses no opinion as to the merit of any claims or the truth of any allegations in that lawsuit.

On December 13, 2006, Harris met with Healy, notified her that Buhrs Americas was terminating her employment, and gave her the termination letter and separation agreement and release.  Healy signed the separation agreement and release.  Harris gave Healy two checks, both signed by Thompson.  The separation agreement and release gave Healy seven days to rescind her release, which she did on December 20, 2006.  She retained the severance payments.

Meanwhile, Aumann flew to Rotterdam and accepted an offer of employment as president of Buhrs Americas some time between Thanksgiving and Christmas of 2006.  Linssen flew to the United States and ended Thompson's continued performance as president on December 19, 2006, approximately one month into the six-month period.  Aumann's employment began on January 8, 2007.  Thompson filed a charge of age discrimination with the Equal Employment Opportunity Commission, which issued a notice of right-to-sue on March 1, 2007.  Thompson commenced this lawsuit in state court on May 31, 2007.  Defendants removed to federal court on June 11, 2007.

## II.    DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant satisfies its burden, the nonmovant must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In determining whether summary judgment is

appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A.      Defendants' Motion for Partial Summary Judgment**

Buhrs Holding moves for summary judgment on Thompson's claims of age discrimination and aiding and abetting age discrimination; reprisal and aiding and abetting reprisal; and intentional infliction of emotional distress (IIED). Buhrs Americas moves for summary judgment on Thompson's claims of age discrimination and aiding and abetting age discrimination and IIED. The Court addresses each claim in turn.

### 1.      *Thompson's Age Discrimination and Reprisal Claims against Buhrs Holding*

Buhrs Holding moves for summary judgment on Thompson's age discrimination and reprisal claims under the ADEA and MHRA on the ground that neither statute covers Buhrs Holding because it is a foreign corporation without operations or employees in the United States. Thompson responds that "Defendants" employed him and had operations in the United States.[5] The parties dispute whether 29 U.S.C. § 623(h)(2), which states "[t]he prohibitions of [section 623 of the ADEA] shall not apply where the employer is a foreign person not controlled by an American employer," excludes Buhrs Holding from liability under the ADEA and whether Buhrs Holding is an "employer" under the MHRA. The Court need not decide these issues because, for the reasons explained below, Thompson has not shown an issue of fact as to whether Buhrs Holding employed him or is otherwise liable under the ADEA and MHRA for his termination regardless of Buhrs Holding's status as a foreign corporation.

---

[5]      Defendants ask the Court to strike the exhibits and deposition transcripts filed by Thompson in support of his response to their motion because they were filed and served two days after the deadline established by District of Minnesota Local Rule 7.1(b)(2). The Court will consider Thompson's summary judgment evidence.

To impose liability under the ADEA, an employment relationship must exist between the plaintiff and the defendant. *Palmer v. Ark. Council on Econ. Educ.*, 154 F.3d 892, 895 (8th Cir. 1998). Liability under the MHRA similarly requires an employment relationship. *See* Minn. Stat. § 363A.08, subd. 2(2) ("[I]t is an unfair employment practice for an employer, because of . . . age to . . . discharge an employee."); *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 552 F. Supp. 2d 867, 872-73 (D. Minn. 2008). Thompson's employment and severance agreements were between Buhrs Americas and Thompson. Both agreements indicate that van der Klooster executed them in his capacity of chairman of the board of Buhrs Americas. Moreover, van der Klooster stated in a declaration that Buhrs Holding has no employees or operations in the United States. Thompson has not identified any evidence establishing a direct employment relationship with Buhrs Holding, and therefore has not shown an issue of fact as to whether Buhrs Holding employed him.

Thompson contends that in the absence of a direct employment relationship, the parent Buhrs Holding is liable under the ADEA and MHRA as either a single entity or joint employer with its subsidiary Buhrs Americas under the four-factor test set forth in *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 392 (8th Cir. 1977).[6] However, when determining whether a parent may be held liable for its subsidiary's employment decisions, the Eighth Circuit applies the test set forth in *Brown v. Fred's, Inc.*, 494 F.3d 736, 739 (8th Cir. 2007), rather than the *Baker* factors.[7] As explained in *Brown*, "[t]here is a 'strong presumption that a parent company is not the employer of its subsidiary's employees, and the courts have found otherwise only in

---

[6]     The four factors are (1) interrelation of operations, (2) common management, (3) centralized control of labor relations; and (4) common ownership or financial control. *Baker*, 560 F.2d at 392.

[7]     The Court notes that Buhrs Americas is an indirect subsidiary of Buhrs Holding, but discerns no reason why this fact would negate the applicability of *Brown*.

extraordinary circumstances.'"  494 F.3d at 739 (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357,

1362 (10th Cir. 1993)).  A parent may employ its subsidiary's employees if "the parent company

so dominates the subsidiary's operations that the two are one entity and therefore one employer."

*Id.* (citing *Johnson v. Flowers Indus. Inc.*, 814 F.2d 978, 981 (4th Cir. 1987)).  Alternatively, the

parent may employ its subsidiary's employees if "the parent company is linked to the alleged

discriminatory action because it controls 'individual employment decisions.'"  *Id.* (quoting

*Leichihman v. Pickwick Int'l*, 814 F.2d 1263, 1268 (8th Cir. 1987)).  More than a normal parent-

subsidiary relationship is required to hold a parent liable for its subsidiary's employment

decisions.  *Iverson v. Ingersoll-Rand Co.*, 125 Fed. App'x 73, 76 (8th Cir. 2004).

      Thompson contends that Buhrs Holding so dominates the operations of Buhrs Americas

that the two are one employer.  He argues that Buhrs Holding's complete ownership of Buhrs

Americas supports imposing liability on Buhrs Holding.  Sole ownership of a subsidiary by a

parent, however, is insufficient to establish liability.  *See Frank*, 3 F.3d at 1364; *Lusk v.

Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997).  Thompson also presents evidence

that sales managers of Buhrs Americas had reporting obligations to "Europe" as well as to

himself and that Pim Aarden, the Buhrs Holding comptroller, was "indirectly" the supervisor of

the Buhrs Americas controller.  The existence of those reporting obligations is insufficient to

establish liability.  *See Frank*, 3 F.3d at 1362 (holding that the fact that project supervisors

ultimately reported to officers in the parent was not enough to present a material factual dispute

because that exercise of control did not exceed the control normally exercised by a parent).

Thompson asserts that the participation of Aarden in the design of the pricing and commission

tools used by Buhrs Group subsidiaries supports imposing liability on Buhrs Holding.  Van der

Klooster testified that Aarden developed those tools in cooperation with suppliers and

distributors, including Buhrs Americas, and that Buhrs Americas could set higher prices or, within certain limits, offer rebates.  Thompson presents no evidence suggesting that Aarden's development of those tools constitutes such domination of Buhrs Americas by Buhrs Holding as to justify imposing liability on Buhrs Holding.  *See generally Lusk*, 129 F.3d at 778 ("A parent corporation's possession of a controlling interest in its subsidiary entitles the parent to the normal incidents of stock ownership, such as the right to . . . set general policies, without forfeiting the protection of limited liability.").  Thompson has not demonstrated an issue of fact as to whether Buhrs Holding dominated Buhrs Americas based on reporting obligations to Europe or Aarden's design of the pricing and commission tools.

In addition, Thompson cites deposition testimony establishing that Buhrs Americas employees were in daily contact with van der Klooster, Linssen, and Clement via telephone and e-mail and that van der Klooster and Linssen had control over Buhrs Americas' employment decisions.  Clement testified that he, van der Klooster, and Linssen were directors of Buhrs Americas.  It is a "well established principle of corporate law that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership."  *United States v. Bestfoods*, 524 U.S. 51, 69 (1998) (quoting *Lusk*, 129 F.3d at 779).  Consequently, there is a presumption that van der Klooster, Linssen, and Clement were wearing their "subsidiary hats" and not their "parent hats" when making decisions for Buhrs Americas.  *See id.*  Thompson offers no evidence rebutting this presumption, and therefore has not shown an issue of fact as to whether Buhrs Holding sufficiently dominated Buhrs Americas as to warrant imposing liability on Buhrs Holding.

Finally, Thompson contends that Buhrs Holding is liable because van der Klooster controlled the decision to terminate his employment.  When determining whether a parent is

liable for its subsidiary's employment decisions, the crucial question is "what entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Frank*, 3 F.3d at 1363.  The Court presumes that van der Klooster was wearing his "subsidiary hat" with respect to Thompson's termination.  *See Bestfoods*, 524 U.S. at 69.  Thompson identified no evidence indicating that van der Klooster was acting for Buhrs Holding rather than Buhrs Americas in connection with Thompson's termination, and therefore has failed to raise an issue of fact regarding whether Buhrs Holding controlled the decision to terminate him.  *See generally Lusk*, 129 F.3d at 779-81 (finding no parent liability under the ADEA when officers of the parent participated in the challenged decision because the officers were also officers of the subsidiary and no evidence rebutted the presumption that they were acting on behalf of the subsidiary).  The Court therefore dismisses Thompson's age discrimination and reprisal claims under the ADEA and MHRA against Buhrs Holding.

> **2.** **_Thompson's Aiding and Abetting Claims_**

Defendants seek summary judgment on Thompson's claims for aiding and abetting under the ADEA and MHRA.[8]  Thompson bases his aiding and abetting claims against Buhrs Holding on the acts of van der Klooster, Linssen, and Clement.  As previously explained, there is a presumption that those directors acted on behalf of Buhrs Americas when engaging in the challenged conduct, *see Bestfoods*, 524 U.S. at 69, and Thompson has not presented evidence rebutting this presumption.  Thompson has not shown a genuine issue of fact as to whether Buhrs Holding aided and abetted age discrimination or reprisal because he has not identified any conduct attributable to Buhrs Holding.  In addition, Thompson has not shown a genuine issue of fact as to whether Buhrs Americas aided and abetted age discrimination because he identified no

---

[8]     Buhrs Americas did not move for summary judgment on Thompson's claim of aiding and abetting reprisal under the ADEA and MHRA.

evidence of discriminatory conduct on the part of Buhrs Holding that Buhrs Americas could have aided and abetted.  Moreover, Buhrs Americas cannot aid and abet itself.  *See United States v. Clark,* 980 F.2d 1143, 1147 (8th Cir. 1992) (Beam, J., concurring); *see also United States v. Hassoun*, 476 F.3d 1181, 1183 n.2 (11th Cir. 2007).  The Court therefore dismisses all of Thompson's aiding and abetting claims under the ADEA and MHRA against Buhrs Holding and his aiding and abetting age discrimination claims under the ADEA and MHRA against Buhrs Americas.

### 3.      *Thompson's Age Discrimination Claims Against Buhrs Americas*

Buhrs Americas seeks summary judgment on Thompson's age discrimination claims under the ADEA and MHRA.  "Age discrimination claims under the [MHRA] are considered under the same analysis as claims under the ADEA."  *Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 855 (8th Cir. 2003).  Thompson may avoid summary judgment by "creating the requisite inference of unlawful discrimination" under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).  *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004).  Under the *McDonnell Douglas* framework, "once the plaintiff employee establishes a prima facie case of discrimination, the burden shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for its actions."  *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 914 (8th Cir. 2007).  If the defendant offers a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to put forth evidence showing the defendant's proffered explanation is a pretext for unlawful discrimination.  *Id.*

To make a prima facie case of discrimination, Thompson must show that he was a member of a protected class when he was terminated, that he was otherwise qualified for the position from which he was terminated when terminated, that Buhrs Americas terminated him, and that his termination occurred under circumstances giving rise to an inference of unlawful

discrimination.  *See Riley v. Lance, Inc.*, 518 F.3d 996, 1000 (8th Cir. 2008).  Replacement by a substantially younger person gives rise to the necessary inference of age discrimination.  *Id.*

Buhrs Americas contends that Thompson has not made a prima facie case of discrimination.  First, Buhrs Americas argues that Thompson cannot show that he was otherwise qualified for the position of president because he was not meeting his employer's legitimate expectations.  Thompson need not make this showing at the prima facie stage.  *See id.* (holding it was error for the district court to require the plaintiff to show a genuine issue of fact as to whether he was performing his job at a level that met the employer's legitimate expectations at the prima facie stage).  Second, Buhrs Americas contends that the nine-year difference in age between Thompson and Aumann is insufficient to give rise to an inference of discrimination. The Court declines to impose a bright-line rule that a nine-year difference in age cannot give rise to an inference of age discrimination.  Thompson has made a prima facie case of age discrimination.

Buhrs Americas identifies van der Klooster's belief that Thompson lacked the necessary skills to be its president as its legitimate, nondiscriminatory reason for Thompson's termination. Thompson responds that Buhrs Americas' explanation is pretext for discrimination.  A plaintiff may establish a question of fact regarding pretext in at least two ways.  *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1120 (8th Cir. 2006).  A plaintiff may show pretext with evidence that the employer's explanation is unworthy of credence because it has no basis in fact. *Id.*  Alternatively, a plaintiff may show pretext by persuading the court that a prohibited reason more likely motivated the employer.  *Id.*  Success on the second route "does not necessarily involve disproving the underlying factual claims of the employer."  *Id.* at 1121.  Instead, success

depends on showing that sufficient evidence "exists for a jury to believe the plaintiff's allegations and find that the proffered explanation was not the true motiving explanation." *Id.*

The record contains evidence from which a juror could infer that van der Klooster was sensitive to Thompson's age.  The terms "1980" and "50?" are written on the first page of a copy of Thompson's resume that was faxed to Buhrs Holding on January 13, 2006.  The resume indicates that Thompson graduated from university and began working in 1980, and Thompson testified that the handwriting is van der Klooster's.  Thompson's deposition testimony and notes from a May 17, 2006, meeting in Amsterdam indicate that van der Klooster asked Thompson how old he was during that meeting.  Moreover, van der Klooster referred to Thompson as the "elder leader" of Buhrs Americas.  These statements, even if unrelated to the adverse employment decision, may support an inference of age discrimination when considered together with other evidence of pretext.  *See Bevan v. Honeywell, Inc.*, 118 F.3d 603, 611 (8th Cir. 1997).

In addition, the evidence that van der Klooster repeatedly instructed Thompson to hire candidates younger than Thompson for open positions at Buhrs Americas and dismissed his concerns about age discrimination may support a finding of pretext.  *See McDonnell Douglas*, 411 U.S. at 804-05; *see also Madel v. FCI Mktg., Inc.*, 116 F.3d 1247, 1252 (8th Cir. 1997) ("Evidence of a corporate atmosphere hostile to older employees '*can*, if sufficient together with other evidence of pretext, support a reasonable inference of age discrimination.'") (quoting *Ryther v. KARE 11*, 108 F.3d 832, 842 (8th Cir. 1997) (en banc)).  Finally, the record contains evidence of age-related comments made by other directors of Buhrs Americas.  These comments may give rise to a reasonable inference of age discrimination when considered together with the other evidence.  *See Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 922-23 (8th Cir. 2000).

When making all reasonable inferences in favor of the non-moving party, the Court concludes that Thompson has adduced, by a thin margin, enough admissible evidence to raise genuine doubt as to whether Buhrs Americas' proffered reason for its termination of Thompson after 259 days of employment was the true motive for his termination.  The Court denies Buhrs Americas' motion for summary judgment on Thompson's age discrimination claims under the ADEA and MHRA.[9]

### 4.    Thompson's IIED Claim

Defendants move for summary judgment on Thompson's claim for IIED.  To succeed on this claim, Thompson must show that Defendants' conduct was extreme and outrageous, that their conduct was intentional or reckless, that their conduct caused emotional distress, and that the distress was severe.  *See Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438-39 (Minn. 1983).  Defendants' conduct must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community," and Thompson's distress "so severe that no reasonable man could be expected to endure it."  *See id.* at 439.  IIED claims are "sharply limited to cases involving particularly egregious facts," and a "high threshold standard of proof" is required to submit the claim to a jury.  *Id.*

Thompson primarily bases his IIED claim on van der Klooster's criticism of Thompson's budget and Clement's criticism of one of Thompson's direct mailings in front of Buhrs Group executives.  While it may have been embarrassing, this criticism of his work product does not constitute extreme and outrageous conduct.  *See Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 868 (Minn. 2003) ("[A]n employer's criticism of an employee's job performance, even if intended to harass, does not constitute extreme and outrageous behavior.").  Thompson also bases his claim

---

[9]    The Court declines to consider the parties' arguments regarding direct evidence because Thompson has avoided summary judgment by creating the requisite inference of unlawful discrimination under *McDonnell Douglas.*

on the embarrassment of being asked his age by van der Klooster during a business meeting and

the resulting laughter from his peers on learning that he would turn 50 in November.  Van der

Klooster's question and the subsequent amusement of Thompson's peers do not constitute

extreme and outrageous conduct.  *See id.* at 865 ("Liability for intentional infliction of emotional

distress does not extend to 'insults, indignities, threats, annoyances, petty oppressions, or other

trivialities.'") (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

Finally, Thompson bases his IIED claim on the circumstances surrounding his

termination.  Van der Klooster testified that he notified Thompson of his termination as soon as

possible to allow him to begin searching for a new job and that he presented the Abraham to

Thompson after his termination because van der Klooster believed the termination meeting

ended amicably.  Thompson speculates that van der Klooster intended the timing of his

termination and the presentation of the Abraham to humiliate him, but identified no evidence

supporting this contention.  While the Court must draw all reasonable inferences in favor of

Thompson on Defendants' motion for summary judgment, the Court shall "do so without resort

to speculation."  *See Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006).

Moreover, even if van der Klooster had intended to humiliate Thompson by presenting

him with the Abraham after his termination, the combination of the presentation, the criticism of

Thompson's work, and the question about his age would not constitute extreme and outrageous

conduct.  *See Hubbard*, 330 N.W.2d at 439-40 (finding employment discipline, verbal and

written criticism, and accusing employee of "chickening out" of trip insufficient); *Glass v. IDS

Fin. Servs., Inc.*, 778 F. Supp. 1029, 1070, 1074 (D. Minn. 1991) (holding that announcing

employee's termination at a meeting, awarding him his 35-year company pin and requesting a

standing ovation on his behalf, and then asking him to give a talk to the group was insufficient).

Thompson has not met the threshold of proof required to submit his IIED claim to the jury.  The Court therefore grants summary judgment on this claim.

**B.**      **Thompson's Motion for Summary Judgment**

Thompson moves for summary judgment on Buhrs Americas' counterclaims for breach of fiduciary duties and breach of the duty of loyalty.[10]  Buhrs Americas claims that Thompson breached his fiduciary duties by causing or knowingly permitting the payment of severance to Healy before the end of the rescission period and encouraging Healy to rescind the release while retaining the severance.  As an officer of Buhrs Americas, Thompson had a duty to discharge his duties "in good faith, in a manner [he] reasonably believe[d] to be in the best interests of the corporation, and with the care an ordinarily prudent person in a like position would exercise under similar circumstances."  Minn. Stat. § 302A.361 (2006).  Moreover, Thompson had a common-law fiduciary duty to Buhrs Americas.  *See Bolander v. Bolander*, 703 N.W.2d 529, 548 (Minn. Ct. App. 2005) ("[A]n officer or director owes a fiduciary relationship to the corporation under common law.").

Thompson first contends that an employee's fiduciary duties, including the duty of loyalty, are limited to avoiding unfair trade practices.  Thompson cites no cases that support this proposition.[11]  In the absence of any supporting authority, the Court declines to impose such a limitation on claims for breach of fiduciary duties.

---

[10]      Buhrs Americas contends that the Court should not consider the documents filed by Thompson in support of his motion because they are not properly authenticated.  The Court would still deny summary judgment even if it were to consider the supporting documents, and therefore declines to determine their admissibility.

[11]      Thompson cites *Eaton Corp. v. Giere*, 971 F.2d 136 (8th Cir. 1992); *Sanitary Farm Dairies, Inc. v. Wolf*, 112 N.W.2d 42 (Minn. 1961); *Rehabilitation Specialists, Inc. v. Koering*, 404 N.W.2d 301 (Minn. Ct. App. 1987); *Loxtercamp, Inc. v. Belgrade Co-op Ass'n*, 368 N.W.2d 299 (Minn. Ct. App. 1985).  These cases involve allegations of unfair trade practices, but do not limit claims for breach of fiduciary duties to such situations.

Next, Thompson contends that no evidence supports Buhrs Americas' allegations of breach of fiduciary duties.  Thompson initially selected Healy for termination and did not object to her termination until after he learned of his own termination.  Although Thompson claims in his supporting memorandum that he "merely pass[ed] the decision" to terminate Healy on to Harris, there is evidence of Thompson's continued involvement with Healy's termination. Thompson's signature is on the checks given to Healy.  Thompson testified that the Buhrs Americas controller told Thompson that the controller was "to get [the checks] to Gary Harris, who was going to be delivering them personally to Sherrie Healy."  Harris testified that when he asked Thompson if the checks for Healy were ready, Thompson replied "I'll check and let you know."  According to Harris, Thompson told him "these are the two documents that you have to provide to Sherrie.  We have to pay her the money if she agrees to them."  Moreover, Thompson testified that he had previously terminated employees who had received a severance package in exchange for the release of claims against the employer.  Finally, Thompson had a prior working relationship with Healy, was responsible for her employment at Buhrs Americas, and knew, possibly as early as 2006, that Healy had rescinded her release while retaining the payments.

A reasonable juror could infer from this evidence that Thompson caused or knowingly permitted Harris to give Healy the checks before the end of the rescission period or, while Thompson was still president of Buhrs Americas, encouraged Healy to rescind her release and retain the severance, and that those acts breached Thompson's fiduciary duties or his duty of loyalty.[12]  Because Buhrs Americas has demonstrated the existence of an issue of fact on its

---

[12]     Thompson contends that Buhrs Americas may not bring a claim for breach of fiduciary duties based on his alleged encouragement of Healy to pursue age discrimination claims.  The Court does not base its denial of summary judgment on any such encouragement.

counterclaims, the Court denies Thompson's motion for summary judgment.[13]

## C.     Thompson's Motion for Sanctions

Thompson brings a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure against Defendants and their counsel for asserting counterclaims.  The Court finds that sanctions are not warranted because the Court has denied Thompson's motion for summary judgment on the counterclaims.  *See* Fed. R. Civ. P. 11 advisory committee notes (1993 amendments) ("[I]f a party has evidence with respect to a contention that would suffice to defeat a motion for summary judgment based thereon, it would have sufficient 'evidentiary support' for purposes of Rule 11.").  Moreover, Thompson presented no evidence supporting his contention that sanctions are warranted because Buhrs Americas brought the counterclaims to punish him for his claims of age discrimination.  Finally, Thompson's motion is untimely because it was filed ten days before the hearing date, *see* D. Minn. LR 7.1(a)(1), and is improper as to Buhrs Holding because it was brought against both Defendants when only Buhrs Americas has asserted counterclaims.  The Court denies Thompson's motion for sanctions.

---

[13]     Thompson's motion for summary judgment was brought against both Defendants, but only Buhrs Americas asserted counterclaims against Thompson.

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT

IS ORDERED THAT:

1.      Defendants' motion for partial summary judgment [Docket No. 91] is
        GRANTED as to Count I insofar as it asserts claims against Buhrs
        Holding and insofar as it asserts claims for aiding and abetting age
        discrimination under the ADEA and MHRA against Buhrs Americas.
        Defendants' motion for partial summary judgment [Docket No. 91] is
        DENIED as to Count I insofar as it asserts claims for age discrimination
        under the ADEA and MHRA against Buhrs Americas.

2.      Defendants' motion for partial summary judgment [Docket No. 91] is
        GRANTED as to Count III insofar as it asserts claims against Buhrs
        Holding.

3.      Defendants' motion for partial summary judgment [Docket No. 91] is
        GRANTED as to Count V.

4.      Defendants' motion for partial summary judgment [Docket No. 91] is
        DENIED AS MOOT as to Counts II, IV, and VI-VIII.

5.      Plaintiff's motion for summary judgment [Docket No. 97] is DENIED.

6.      Plaintiff's motion for sanctions [Docket No. 125] is DENIED.

7.      Count I of Plaintiff's Complaint [Docket No. 1] is DISMISSED WITH
        PREJUDICE insofar as it asserts claims against Buhrs Holding and insofar
        as it asserts claims for aiding and abetting age discrimination under the
        ADEA and MHRA against Buhrs Americas.

8.      Count III of Plaintiff's Complaint [Docket No. 1] is DISMISSED WITH
        PREJUDICE insofar as it asserts claims against Buhrs Holding.

9.      Counts II and IV-VIII of Plaintiff's Complaint [Docket No. 1] are
        DISMISSED WITH PREJUDICE.

Dated:  March 3, 2009

                                          s/  Joan N. Ericksen
                                          JOAN N. ERICKSEN
                                          United States District Judge